IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DWIGHT DOVE,

    Plaintiff,

v.

BAYER HEALTHCARE LLC, Biological Products Division, a for profit business entity,

    Defendant.

No. C 05-02873 JSW

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Now before the Court is the motion for summary judgment filed by Defendant Bayer Healthcare LLC ("Bayer"). Having carefully considered the parties' arguments, the relevant legal authority, and having had the benefit of oral argument, the Court hereby GRANTS Defendant's motion for summary judgment.

**BACKGROUND**

Plaintiff brings suit against Bayer alleging race discrimination for failure to promote him in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940(a), *et. seq*. Plaintiff has worked for Bayer for approximately five years, first in various positions as an animal caretaker and then as a general worker in the Biotechnology business unit, where he remains. At no point in any of the positions while at Bayer did Plaintiff have any HVAC duties. (Declaration of James T. Conley ("Conley Decl."), Ex. A (Dove Depo.) at 37:15-24; 46:14-19.) Prior to joining Bayer, Plaintiff had no prior work experience or HVAC-related duties. (*See id.*, Ex. A at 29:10-16.)

1    In addition, the undisputed facts indicate that Plaintiff received an associate of sciences
2 degree and a certificate of completion in refrigeration and air conditioning from Laney College
3 in 1984. (*See id.*, Ex. A at 13:17-25; Exs. 2-4.) On the relevant subjects, Plaintiff completed
4 two courses on basic refrigeration and principles and practices of air conditioning. (Conley
5 Decl., Ex. B.)

6    The main pharmaceutical product manufactured at Bayer's Berkeley facility is Kogenate
7 FS, a clotting agent principally used by hemophiliacs to help clot their blood. (*See* Smith Decl.,
8 Ex. A at 32:14-25; Smith Decl., ¶ 5.) Bayer must follow rigorous internal operating procedures
9 as well as follow the mandates of Federal Regulations, including maintaining proper
10 environmental air standards. (*See* Smith Decl., ¶ 6; Conley Decl., Ex. A at 33:13-35:8.)
11 Because the product must be safe for human use, the manufacturing process requires that certain
12 production steps be conducted in "clean room" environments in which that the level of
13 contaminants is so low that they have been almost entirely removed from the air. (*See* Smith
14 Decl., ¶ 7.) In addition, the HVAC systems (heating, ventilation and air conditioning systems)
15 and the mechanics who maintain them are critical in the pharmaceutical manufacturing process.
16 (*See id.*, ¶ 8.)

17    On October 2, 2001, after the transfer of a Senior Level HVAC mechanic from the
18 department, Richard Smith, the HVAC supervisor, formulated and placed on the Bayer
19 electronic intranet a job posting for the HVAC Mechanic vacancy. (*See* Smith Decl., ¶ 9;
20 Declaration of Connie Hart ("Hart Decl."), ¶ 8.) The job posting was listed internally for a
21 seven-day period during which time internal candidates could apply. (*See* Hart Decl., ¶ 3.)
22 External candidates could receive notice through newspaper or internet advertisements or
23 through other agencies. (*See id.*) The position was advertised as either an A or B upper level
24 position, and the job requisition request, which was approved by Bayer management and
25 Human Resources, required that the applicant have either work experience in HVAC or at a
26 minimum, an understanding of fundamental HVAC principles. (*See* Smith Decl., ¶ 9; Hart
27 Decl., ¶ 8.) The job posting explicitly delineated the separate requirements of the A and the B
28 level positions. (*See* Smith Decl., ¶ 10.) In addition, supervisor Richard Smith formulated ten

2

1 questions related to the HVAC field (eight basic technical questions and two non-technical
2 questions) designed to evaluate the qualifications and competencies of the applicants. (*See id.*,
3 ¶¶ 11, 12.)

4 In accordance with Bayer policy, the Human Resources department forwarded
5 applications from various applicants, including Plaintiff Dove, who was selected for an
6 interview. During the interview, it was clear to Smith that Plaintiff had a very limited exposure
7 to HVAC units, had no work experience in the field, and, after questioning on the relevant
8 technical issues, Plaintiff scored zero out of a possible eight points. (*See id.*, ¶¶ 12-15.) Smith
9 found that Plaintiff gave no indication that he had any idea how to answer any of the questions,
10 maintained a puzzled look on his face during the course of the interview, and even at one point
11 asked whether the interview should proceed because he did not grasp the HVAC subjects raised
12 during the interview. (*See id.*, ¶ 15.) Plaintiff did not appear to understand the duties required
13 of the job and was completely unfamiliar with any of even the most basic technical HVAC
14 terms. (*See id.*, ¶ 16.)

15 Thereafter, Smith interviewed another, external candidate, James Jewell, for the
16 position. Mr. Jewell was selected based on his 15 years of experience in the HVAC field,
17 including owning his own HVAC repair company, his answering the technical questions
18 properly during the interview and his demonstration of competency in the area established
19 during his interview with Smith. (*See id.*, ¶ 19.)

20 The Court will address the additional specific facts as required in the analysis.

## ANALYSIS

**A.     Standards Applicable to Motions for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In considering a motion for summary judgment, the court may not weigh the

evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact must take care adequately to point a court to the evidence precluding summary judgment because a court is "'not required to comb the record to find some reason to deny a motion for summary judgment.'" *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

////

////

////

4

**B.     Claim for Race Discrimination Does Not Survive Summary Judgment.**

Plaintiff brings a single-count complaint for race discrimination and contends that Bayer failed to promote him based on his membership in a protected class. Plaintiff alleges that he was denied a promotion to the HVAC department because of his race. In order to make a claim for discrimination, Plaintiff must establish that he suffered an adverse employment action that was motivated by intentional discriminatory animus. *See, e.g., Guz v. Bechtel National, Inc.*, 24 Cal.4th 317, 353-58 (2000). The proper legal framework for determining whether Plaintiff's claim should survive summary judgment is the familiar burden-shifting scheme set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

First, Plaintiff must establish a prima facie case of discrimination. *See id.*; *Guz,* 24 Cal.4th at 351-54. Whether Plaintiff can meet his burden to establish a prima facie case of discrimination is a matter of law to be determined by the court. *Caldwell v. Paramount Unified School District*, 41 Cal. App. 4th 189, 201 (1995). If Plaintiff establishes a prima facie case, the burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Then, in order to prevail, Plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision was a pretext for another, discriminatory motive. *See Guz*, 24 Cal.4th at 351-54; *see also Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1061 (9th Cir. 2002). Plaintiff may establish a prima facie case of discrimination by demonstrating that (1) he belongs to a statutorily protected class; (2) he applied for and was qualified for an available position; (3) he suffered an adverse employment decision; and (4) similarly situated individuals not in the protected class were treated more favorably. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993). The only significant difference in the FEHA analysis is that in order to establish a prima facie case, Plaintiff must, in addition to the first three elements, demonstrate some other circumstances that suggests discriminatory motive. *See, e.g., Guz*, 24 Cal.4th at 355.

If Plaintiff succeeds in establishing a prima facie case, the burden of production shifts to Bayer to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. *See McDonnell Douglas*, 411 U.S. at 802. If Bayer does so, Plaintiff must

demonstrate that Bayer's articulated reason is a pretext for unlawful discrimination by "'either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Plaintiff's evidence must be both specific and substantial to overcome the legitimate reasons set forth by the employer. *Aragon v. Republic Silver State Disposal, Inc*., 292 F.3d 654, 659 (9th Cir. 2002).

### 1. Prima Facie Case.

At summary judgment, the degree of proof necessary to establish a prima facie case is "minimal and does not even need to rise to the level of a preponderance of the evidence." *Lyons v. England,* 307 F.3d 1092, 1112 (9th Cir.2002) (quoting *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir. 1994)). Although the burden for establishing a prima facie case is an easy one to satisfy, Plaintiff has failed to do so. Although Plaintiff's race makes him a member of a protected class and his failure to be promoted qualifies as an adverse employment action, he fails to satisfy the other two prongs of the test; that is, to demonstrate that he was qualified for the position and that other, similarly situated individuals not in the protected class were treated more favorably.

#### a. Plaintiff has failed to demonstrate that he was qualified for the position.

It is undisputed that the qualifications for the position of the B level HVAC mechanic, as formulated by the department supervisor, Richard Smith, were posted on the Bayer electronic intranet and designated as job posting BK 1794. (*See* Smith Decl., ¶ 10, Ex. A.) The posting specified that the maintenance technician would need to "possess some knowledge and abilities of other trades such as electrical, mechanical, refrigeration, instrumentation," as well as "being competent in the duties and qualification of a 'C' level Technician." (*See id.*, Ex. A at DOV 00018.) The posting also required that the applicant demonstrate the ability to work independently with minimal supervision or minimal assistance to accomplish specific tasks in the HVAC context, including, for example, possessing an understanding of basis principles of electricity, electronics, mechanical and fluid power systems, pipefitting, brazing metallurgy, fan

6

1  drive systems, air moving devices, HEPA filter installation and leak testing as well a number of
2  other, specific requirements and competencies.  (Smith Decl., Ex. A.)

3    There is simply no evidence in the record that Plaintiff was qualified for the position.
4  He had no previous experience in the field and only took two, somewhat relevant, courses 17
5  years prior to applying for the promotion.  In addition, during the interview, Plaintiff gave no
6  indication that he had any idea how to answer any of the questions, continued to be puzzled, and
7  even asked whether the interview should proceed because he did not grasp the HVAC subjects
8  raised during the course of questioning.  (*See id.*, ¶ 15.)  Plaintiff did not appear to understand
9  the duties required of the job and was completely unfamiliar with any of even the most basic
10 technical HVAC terms.  (*See id.*, ¶ 16.)  Plaintiff scored zero points on the technical questions
11 posed during the interview.  (*See id.*, ¶ 15.)

12   Instead of hiring Plaintiff, Mr. Smith, the supervisor of the HVAC department, hired
13 another applicant from the pool, an external applicant James Jewell, who possessed over 15
14 years of HVAC experience.  There is no dispute between the parties that Mr. Jewell was
15 qualified for the position.  (*See* Opp. Br. at 8.)[1]

16   Based on this evidence, the Court finds that Plaintiff has failed to demonstrate that there
17 is a genuine dispute of material fact regarding his qualification for the position.  Therefore, the
18 Court finds that Plaintiff has failed to establish a prima facie case of discrimination based on the
19 demonstrating Plaintiff was qualified for the position.  *See Hicks,* 509 U.S. at 506.[2]

---

[1] Plaintiff's contention that the qualifications of Mr. Jewell are irrelevant as Mr. Smith had already decided not to hire Plaintiff for the position before reviewing Mr. Jewell's application is without merit.  (*See* Opp. Br. at 8.)  The uncontested record indicates that although Mr. Jewell's application was dated after Plaintiff was interviewed, Mr. Smith had not made his hiring decision until after he had interviewed all of the prospective candidates. (*See* Conley Reply Decl., Ex. B (Smith Depo) at 86:19-87:7; *see also* Dove Decl., ¶ 5 ("Mr. Smith continued with the interview and at the end he said that he would have to interview all other candidates before making his decision.").)

[2] Plaintiff's submission of additional authority at the hearing on this motion does not support his position.  In *Sledge v. Goodyear Dunlop Tires North American, Ltd.*, 275 F.3d 1014, 1019 (11th Cir. 2001), the Court found, based on the record before it, that there was a dispute of material fact regarding the existence of race discrimination where defendant repeatedly refused to promote plaintiff in favor of white applicants, even where the evidence demonstrated that plaintiff was qualified for the position.  In this matter, the undisputed evidence indicates that Plaintiff was not qualified for the promotion.

7

### b. Plaintiff has failed to demonstrate that other, similarly situated individuals were treated more favorably.

In addition, Plaintiff has failed to raise a dispute of fact regarding whether other employees outside of his protected class were treated more favorably. In this regard, Plaintiff merely maintains that he has formed the belief that another, equally unqualified individual, Scott Higgins, was promoted in the HVAC department to a position for which he was unqualified.

First, the evidence submitted by Plaintiff to demonstrate the basis for his belief that Mr. Higgins was unqualified for the position for which he promoted is inadmissible. The evidence proffered by Plaintiff regarding Mr. Higgins' lack of qualifications is contained in Plaintiff's declaration and a declaration submitted by a co-worker, and plaintiff in another, related matter, Mr. Lavon Jones. In his own declaration, Plaintiff stated that he overheard Mr. Higgins speaking with another individual about his own lack of experience in the HVAC field. (*See* Declaration of Dwight Dove ("Dove Decl."), ¶ 7.) Plaintiff also declares that he "later found out through people who knew [Mr. Higgins] that he did not have any verifiable experience in HVAC.'" (*See id.*) Mr. Jones states in his declaration that he was told by Mr. Higgins that he did not have HVAC experience. (*See* Declaration of Lavon Jones, ¶¶ 14, 18.) However, both Plaintiff's and Mr. Jones' declarations regarding their opinions about Mr. Higgins' qualifications and their testimony regarding overhearing discussions about Mr. Higgins is inadmissible as hearsay. *See* Fed. R. Evid. 802. In addition, the statements are inadmissible because they were made without sufficient foundation. Neither declarant possesses personal knowledge or any requisite qualifications to make an assessment of Mr. Higgins' qualifications for the position for which he was hired. *See* Fed. R. Evid. 602, 701. Plaintiff conceded in his deposition that he had no involvement in the hiring of Mr. Higgins and had no first-hand knowledge of the facts regarding his qualifications. (*See* Declaration of James T. Conley on Reply ("Conley Reply Decl."), Ex. A (Dove Depo) at 88:5-89:23.) Mr. Jones similarly admitted that he had not reviewed Mr. Higgins' application and was not familiar with his work or educational experience. (*See id.*, Ex. A (Jones Depo) at 306:17-307:12.) Thus, both

8

Plaintiff's and Jones' declarations regarding their impressions of Mr. Higgins' qualifications is inadmissible as hearsay and based on lack of foundation.[3]

In addition, Plaintiff maintains that the reason Mr. Higgins was hired in the HVAC department was that he was friends with the supervisor. (*See* Dove Decl., ¶ 7 ("Richard Smith and Scott Higgins are 'buddies'"); Declaration of Charles Stephen Ralston, Ex. 4 at DOV002275.) To the extent that Plaintiff could demonstrate on the basis of admissible evidence that Mr. Higgins was not actually qualified for the position he attained, this promotion demonstrates at best, that an under-qualified individual was promoted to another position within the same department based on his friendship with a supervisor. This does not constitute evidence demonstrating that other, similarly situated employees outside of Plaintiff's protected class were treated more favorably. Therefore, the Court finds that Plaintiff has not met his burden to demonstrate the existence of a prima facie case of race discrimination based on this factor. Therefore, summary judgment on Plaintiff's claim is properly granted.

However, even assuming *arguendo* that Plaintiff had established a prima facie case of race discrimination, summary judgment is still warranted because Bayer has asserted a legitimate, nondiscriminatory reason for Plaintiff's termination, and Plaintiff has failed to demonstrate the reason is merely pretext.

**2.     Bayer Has Demonstrated Legitimate Business Reasons for Failing to Promote Plaintiff.**

Even if Plaintiff could successfully establish a prima facie case of race discrimination, the undisputed facts demonstrate that Bayer had legitimate business reasons to decide not to promote him. Bayer's decision not to advance a less qualified candidate and to hire another more qualified applicant qualifies as a legitimate business reason. *See, e.g., Unt v. Aerospace Corp.*, 765 F.2d 1440, 1445 (9th Cir. 1985); *see also Fragante v. Honolulu*, 888 F.2d 591, 599 (9th Cir. 1989) ("An employer's decision may be justified by the hired employee's superior qualification unless the purported justification is a pretext for invidious discrimination"). The

---

[3] The Court sustains Defendant's objections to evidence with regard to the references to Mr. Higgins in the Dove and Lavon declarations. The remainder of the evidence to which Defendant and Plaintiff object was not necessary to the resolution of this motion. Therefore, the Court need not rule on the admissibility of such evidence at this time.

9

1 record is clear that Plaintiff failed to meet the clearly specified qualifications for the position.
2 Even Plaintiff explicitly concedes that James Jewell was highly qualified for the position.
3 (*See* Opp. Br. at 8.) Defendant has met its burden of demonstrating legitimate business reasons
4 for not promoting Plaintiff to the HVAC position.

### 3. Plaintiff Fails to Raise an Issue of Disputed Fact Regarding Pretext.

Because Defendant presents evidence demonstrating a legitimate nondiscriminatory reason for the termination, Plaintiff bears the burden of demonstrating that Defendant's articulated reason is pretextual. Plaintiff may do so "either [1] directly by persuading the court that a discriminatory reason more likely motivated the employer or [2] indirectly by showing that the employer's proffered explanation is unworthy of credence." *Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1437 (9th Cir. 1990) (internal cites and quotations omitted).

First, the Court has already determined that the undisputed evidence demonstrates that Plaintiff failed to qualify for the position for which he applied. Plaintiff fails to refute Bayer's legitimate non-discriminatory reasons for failing to promote him. Plaintiff's theory of the case is that another, possibly similarly under-qualified individual received a promotion to the HVAC department by virtue of his friendship with the supervisor, and thus the only reason he did not receive a promotion was because of his race. Again, the evidence proffered regarding Mr. Higgins' qualifications for the position is inadmissible and, even if accepted as true, does not establish that Mr. Higgins was similarly-situated.

Second, the Court is not persuaded by Plaintiff's argument that the history of hiring in the HVAC department demonstrates racial animus. (*See* Opp. Br. at 13-14.) The HVAC department during the time period at issue averaged six to eight employees. (*See* Reply Declaration of Richard Smith, ¶ 2.) The Ninth Circuit has held that a sampling of such a small universe detracts from the value of statistical evidence. *See Morita v. Southern California Permanente Medical Group*, 541 F.2d 217, 220 (9th Cir. 1976) ("statistical evidence derived from an extremely small universe . . . has little predictive value and must be disregarded.") (citations and internal quotations omitted); *see also Sengupta v. Morrison-Knudsen Co.,* 804

10

1  F.2d 1072, 1076 (9th Cir. 1986) (finding that a department of 28 employees was too small for
2  statistical analysis of race under Title VII).

3  Therefore, the Court finds that Plaintiff has failed to set forth any direct or indirect
4  evidence to persuade the Court that a discriminatory reason more likely motivated the employer
5  or any indirect evidence tending to demonstrate that the employer's proffered explanation is
6  unworthy of credence. *See Merrick,* 892 F.2d at 1437. Having failed to raise a disputed fact
7  demonstrating that Bayer's articulated reason for termination is pretextual, either directly or
8  indirectly, the Court grants summary judgment on Plaintiff's allegation of discrimination based
9  on race.

## CONCLUSION

For the foregoing reasons, Defendant Bayer's motion for summary judgment is GRANTED. Judgment shall be entered in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.**

Dated: June 15, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE